UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:17-CR-315-B-1 |
| | § | |
| ALEXIS C. NORMAN, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alexis C. Norman ("Norman")'s motion for compassionate release (Doc. 86). For the reasons set forth below, the Court **DENIES** the motion.

I.

BACKGROUND

In April 2016, Norman pleaded guilty to health care fraud and aiding and abetting, and was sentenced to 105 months of imprisonment. *See* J. at 1, *United States v. Norman*, No. 3:15-CR-066-B (N.D. Tex. Apr. 12, 2016), ECF No. 66. While on pretrial release, Norman was indicted and charged with additional fraud-related offenses. *See* Doc. 1, Indictment. She subsequently pleaded guilty to: one count of conspiracy to commit health care fraud; three counts of health care fraud, aiding and abetting health care fraud, and committing an offense while on release; and one count of health care fraud and aiding and abetting health care fraud. Doc. 72, J., 1.

On May 16, 2019, the Court sentenced Norman to 360 months of imprisonment to "run concurrently with [her] undischarged term of imprisonment" from her prior case. *Id.* at 2. Specifically, her sentence "consists of 120 months as to each of Counts 1 and 5, to run consecutively

- 1 -

with each other, and 120 months as to each of Counts 2, 3, and 4, to run concurrently with each other, and consecutively to both Counts 1 and 5[.]" *Id.*

Norman, now fifty years old, is confined at Carswell Federal Medical Center ("Carswell FMC") with a statutory release date of June 22, 2044.[1] As of February 22, 2022, Carswell FMC reports 48 active and 875 recovered cases of COVID-19 among its inmates.[2] Norman filed a motion for compassionate release on July 16, 2021, which the Court denied because Norman failed to demonstrate extraordinary and compelling reasons for compassionate release. *See* Doc. 83, Def.'s Original Mot.; *United States v. Norman*, 2021 WL 3406729, at *5 (N.D. Tex. Aug. 4, 2021).

On December 30, 2021, Norman filed her second motion for compassionate release. Doc. 86, Def.'s Mot. Norman supplemented her motion on January 13, 2022, adding a request that she be appointed counsel.[3] Doc. 89, Def.'s Suppl. The Court reviews her motion below.

## II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the

---

[1] The Court derives this information from the Bureau of Prisons ("BOP")'s inmate locator, available at https://www.bop.gov/inmateloc/ (last accessed Feb. 22, 2022).

[2] The Court derives this information from the BOP's COVID-19 webpage, available at https://www.bop.gob/coronavirus/ (last accessed Feb. 22, 2022).

[3] Though styled as a "Renewed Letter Motion for Compassionate Release," Norman's supplemental filing contains abridged versions of the arguments set forth in her December 30th filing and purports to incorporate it by reference. *See* Doc. 89, Def.'s Suppl., 1; *compare id., with* Doc. 87, Def.'s Br. Accordingly, the Court construes Norman's December 30th and January 13th filings as setting forth a single motion for compassionate release and considers the arguments set forth in each together.

factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)).

## III.

## ANALYSIS

*A.    Norman is Not Entitled to Appointment of Counsel*

Norman's request for appointment of counsel is **DENIED**. A district court must appoint counsel when there is a statutory or constitutional requirement to do so and may appoint counsel, under certain other circumstances, if justice so requires. *See, e.g.*, *United States v. Strother*, 2021 WL 2188136, at *2 (E.D. Tex. May 27, 2021); *United States v. Contreras*, 2021 WL 1536504, at *1 (E.D. Tex. Apr. 19, 2021) (noting that district courts have discretion to appoint counsel for some claims when "the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing [the] claim") (quoting *United States v. Molina-Flores*, 2018 WL 10050316, at *2 (N.D. Tex. Feb. 13, 2018)). This Court, like others within the Fifth Circuit, has held that there is no statutory or constitutional right to appointment of counsel for motions filed under § 3582(c)(1)(A). *United States v. Reed*, 2022 WL 198405, at *1 (N.D. Tex. Jan. 21, 2022); *United States v. Jackson*, 2020 WL 4365633, at *3 (N.D. Tex. July 30, 2020), *aff'd*, 829 F. App'x 73 (5th Cir. 2020); *see, e.g.*, *Contreras*, 2021 WL 1536504, at *2; *United States v. Wilfred*, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). And here, Norman's motion "presents straightforward claims based on h[er] medical conditions and the threat from COVID-19 [and] is not legally or factually complex." *See United States v. Smith*, 2022 WL 326688, at *1 (N.D. Tex. Feb. 2, 2022); *cf. Contreras*, 2021 WL 1536504, at *2 (noting that compassionate release motions are generally "not particularly complex factually or legally") (quoting *United States v. Drayton*, 2020 WL 2572402, at

*1 (D. Kan. May 21, 2020)). Therefore, the Court finds that Norman is not entitled to appointment of counsel.

B.  *Norman's Motion for Compassionate Release Fails*

As explained below, the Court denies Norman's request for compassionate release because she has not demonstrated extraordinary and compelling reasons for a sentence modification and because the § 3553(a) factors weigh against her request.

    1.  <u>Norman Has Exhausted Her Administrative Remedies</u>

Section 3582(c)(1)(A) allows a defendant to bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" § 3582(c)(1)(A).[4]

Here, the Court finds that Norman has satisfied the exhaustion requirement. In support of her motion, Norman provides a copy of her request for compassionate release, dated September 13, 2021, and the warden's response denying her request, dated October 25, 2021. Doc 87, Ex. 2. The response shows that more than thirty days have lapsed between the warden's receipt of Norman's request and the filing of her motion. *See id.* Thus, Norman satisfied the exhaustion requirement under § 3582. *See Ezukanma*, 2020 WL 4569067, at *2–5. Having determined that Norman satisfied the exhaustion requirement, the Court turns to the merits of her compassionate-release motion.

---

[4] The Court clarified its interpretation of the thirty-day prong of the exhaustion requirement in *United States v. Ezukanma*, 2020 WL 4569067, at *2–5 (N.D. Tex. Aug. 7, 2020). In sum, based on the plain language of § 3582(c)(1)(A), the Court concluded that to comply with the statute's exhaustion requirement, a defendant may show that thirty days have passed since the warden's receipt of their compassionate-release request—irrespective of a denial. *See id.* at *5.

### 2. Norman Has Not Demonstrated Extraordinary and Compelling Reasons for Release

Although Norman exhausted her administrative remedies, she has not shown "extraordinary and compelling reasons" justifying her proposed sentence modification. *See* § 3582(c)(1)(A)(i). Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that merit compassionate release. *See id.* Rather, Congress "delegated that authority to the Sentencing Commission" and directed it "to promulgate general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (citations and internal quotation marks omitted).

Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement—U.S.S.G. § 1B1.13—that "describes four 'extraordinary and compelling reasons' that could warrant a reduced sentence: (1) medical conditions, (2) age, (3) family circumstances, and (4) '[o]ther [r]easons.'" *United States v. Tyler*, 2021 WL 736467, at *2 (E.D. La. Feb. 25, 2021) (quoting U.S.S.G. § 1B1.13 cmt. 1(A)–(D)). The Fifth Circuit has since held that § 1B1.13 only applies to motions filed by "the Director of the [BOP]" and thus does not "bind[] a district court addressing a prisoner's own motion under § 3582." *Shkambi*, 993 F3d at 392–93 (citing § 1B1.13). While not binding, § 1B1.13 and its commentary nonetheless "inform[] [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *see United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam). Applying its discretion, the Court concludes that Norman has not provided "extraordinary and compelling reasons" for release. *See* § 3582(c)(1)(A).

To begin, the Court notes that Norman's instant motion for compassionate release largely mirrors and rephrases the arguments made in her first motion for compassionate release. *Compare* Doc. 87, Def.'s Br., *with* Doc. 83, Def.'s Original Mot. Norman alleges that she suffers from several medical issues including, but not limited to, chronic obstructive pulmonary disease, obesity, and respiratory issues, which she avers she developed as the result of contracting COVID in August 2020.[5] Doc. 87, Def.'s Br., 2–4, 17–20; *see also* Doc. 89, Def.'s Suppl., 1. Although Norman provides voluminous documentation of medical visits evidencing her symptoms, *see* Doc. 87, Ex. 3 (BOP Health Services Records); Doc. 87-1, Ex. 4 (Summary of Clinical Encounters), the Court finds Norman's medical conditions do not rise to the level of extraordinary and compelling reasons warranting her proposed sentence reduction.

As with her first motion, Norman has failed to show "that her conditions involve necessity and urgency such that her requested sentence modification is warranted." *Norman*, 2021 WL 3406729, at *4. As explained in its previous order, the Court notes that its analysis of Norman's medical conditions goes beyond mere diagnoses and examines "the severity of her medical conditions and her ability to manage her health while incarcerated." *See Norman*, 2021 WL 3406729, at *4 (citing *United States v. Isidaehomen*, 2021 WL 243458, at *3 (N.D. Tex. Jan. 25, 2021)). Turning to Norman's medical conditions, the Court recognizes that Norman has reported chronic headaches, shortness of breath, and other symptoms in various visits with doctors over the past eighteen months. *See* Doc. 87-1, Ex. 4 (Summary of Clinical Encounters). However, a review of her medical records suggests that Norman's conditions have not left her incapacitated or otherwise unable to care for

---

[5] Norman also asserts that many of her symptoms are consistent with other, more severe medical issues such as relapsing-remitting multiple sclerosis or other forms of demyelinating disease. *See* Doc. 87, Def.'s Br., 3–4, 9–10. While the Court will consider Norman's documented symptoms, it will not assume that Norman suffers from undiagnosed medical ailments.

herself. *See* Doc. 87, Def.'s Br., Ex. 3 (BOP Health Services Medical Duty Status Form) (listing "No Climbing" as Norman's only physical restriction/limitation as of July 8, 2021); Doc. 87-3, Ex. 18 (X-Ray Test Results) (making "normal" or "unremarkable" findings after review of Norman's chest x-rays in July 2021); Doc. 87-3, Ex. 19 (Pulmonary Function Test ("PFT") Results) (noting Norman's "excellent response" to bronchodilator treatment of respiratory issues in a report dated November 1, 2021); Doc. 87-3, Ex. 20 (Magnetic Resonance Imaging ("MRI") Scan Results) (making "normal" or "unremarkable" findings and concluding that there was "[n]o acute intracranial abnormality with moderate nonspecific supratentorial white matter changes" in Norman's brain). Moreover, Norman's medical documentation makes it evident that she has received medication, testing, and attention to help her treat and manage her conditions. *See* Doc. 87, Ex. 3 (BOP Health Services Records); Doc. 87-1, Ex. 4 (Summary of Clinical Encounters); Doc. 87-3, Ex. 18 (X-Ray Test Results); Doc. 87-3, Ex. 19 (PFT Test Results); Doc. 87-4, Ex. 20 (MRI Scan Results). Thus, although the Court is sympathetic to Norman's various ailments, it is unconvinced that any of her conditions are so severe or urgent as to warrant her proposed sentence reduction.

The Court also rejects Norman's assertion that extraordinary and compelling reasons for her sentence reduction exist because her medical conditions make her more susceptible to severe complications should she contract COVID. *See* Doc. 87, Def.'s Br., 21–22. Norman, like all inmates at Carswell FMC, was offered the opportunity to become vaccinated against COVID-19 but refused. *See* Doc. 87, Def.'s Br., 20. In denying Norman's first motion for compassionate release, the Court emphasized that "a defendant 'cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because [s]he faces an increased risk of severe illness

or death should [s]he contract COVID-19 on the other hand.'" *Norman*, 2021 WL 3406729, at *4 (quoting *United States v. Pruitt*, 2021 WL 1222155, at *3 (N.D. Tex. Apr. 1, 2021)).

In her instant motion, Norman (who remains unvaccinated) claims she cannot become vaccinated for medical reasons. *See* Doc. 87, Def.'s Br., 20–21. Specifically, she avers that (1) she suffered a bad reaction to a vaccine while in college,[6] and (2) her mother passed away from a blood clot after receiving a COVID-19 vaccination. *Id.* As evidence, Norman attaches documentation showing that she has refused other vaccinations in the past and that her mother passed away due to a blood clot roughly a month after receiving her first dose of a COVID-19 vaccination. *See* Doc. 87-3, Ex. 21 (Vaccine Refusals); Doc. 87-1, Ex. 4 (Immunization Record); Doc. 87-3, Ex. 23 (Death Certificate and Vaccination Record). The Court finds these documents unavailing. Norman's history of refusing to receive other vaccinations is evidence only that she is unwilling to become vaccinated; it is not evidence that getting vaccinated would pose some sort of health risk to her. *See* Doc. 87-3, Ex. 21 (Vaccine Refusals). Similarly, Norman's documentation as to her mother's passing establishes only that her mother had received her first COVID-19 vaccination shot at the time of her death; it does not demonstrate that her passing was caused by her vaccination or that Norman would be subject to the same risk. *See* Doc. 87-3, Ex. 23 (Death Certificate and Vaccination Record). Absent a documented medical basis for refusing the vaccine, the Court is not persuaded that Norman's individualized risk posed by COVID-19 is an extraordinary and compelling reason for a sentence reduction, particularly in light of the medical testing and treatment she has received at Carswell FMC. Therefore, exercising its discretion, the Court **DENIES WITHOUT PREJUDICE** Norman's motion.

---

[6] Norman does not provide evidence of this event. *See* Doc. 87, Def.'s Br., 20 (citing to a nonexistent Exhibit 22).

### 3. The § 3553 Factors Weigh Against Release

Finally, even had Norman demonstrated extraordinary and compelling reasons warranting a sentence modification, the Court is required to consider the sentencing factors set forth in § 3553 to the extent they are applicable. § 3582(c)(1)(A). Section 3553 requires the Court to consider, among other things, whether a sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense[.]" § 3553(a)(2)(A). The Court is not persuaded that these factors support Norman's request.

While on pretrial release following her conviction for health care fraud and aiding and abetting health care fraud, Norman pleaded guilty to additional fraud-related offenses. Doc. 72, J., 1. In Norman's case, the Court found 360 months of imprisonment appropriate to serve the goals of § 3553(a). *Id.* And with a statutory release date of June 22, 2044, a significant portion—268 months, or 74%—of Norman's sentence remains to be served.[7] In this case, Norman's request for a sentence modification would not "reflect the seriousness of the offence," "promote respect for the law," or "provide just punishment for the offense[.]" § 3553(a)(2)(A); *see also Thompson*, 984 F.3d at 434 (noting that compassionate release is generally granted only "for defendants who had already served

---

[7] The Court recognizes Norman's position that she is entitled to 5,190 days (roughly 171 months) of earned time credits through the First Step Act. *See* Doc. 87, Def.'s Br., 16; Doc. 89, Def.'s Suppl., 2. But this position runs contrary to the BOP's records, which show her scheduled release date as June 22, 2044. *See* Inmate Locator, BOP, https://www.bop.gov/inmateloc/ (last visited Feb. 9, 2022); *see also* Doc. 89, Def.'s Suppl., 1 ("Defendant is not scheduled for release until 2044."). To the extent Norman seeks to challenge the BOP's failure to award time credits, such challenge is "not properly raised in a compassionate release motion . . . [and] should be raised by [Norman] in a motion filed pursuant to 28 U.S.C. § 2241." *United States v. Bowman*, 2021 WL 5366963, at *1 n.1 (W.D. La. Nov. 16, 2021); *see also Norman v. Carr*, 2021 WL 5410168, at *5 (N.D. Tex. Nov. 18, 2021). Accordingly, the Court will consider any arguments regarding the BOP's calculation of Norman's earned time credit if properly raised in a § 2241 petition and upon proof that Norman has exhausted her administrative remedies. *See generally Gallegos-Hernandez v. United States*, 688 F.3d 190, 194 (5th Cir. 2012) ("[A] federal prisoner filing a § 2241 petition must first pursue all available administrative remedies.").

the lion's share of their sentences"). The § 3553(a) factors thus weigh against Norman's request. This is an independent justification for denying her motion.

## IV.

## CONCLUSION

Norman's request for compassionate release fails because she has not demonstrated extraordinary and compelling reasons for compassionate release, and the § 3553(a) factors weigh against her request. For these reasons, Norman's motion for compassionate release (Doc. 86) is **DENIED WITHOUT PREJUDICE**. And to the extent Norman's supplemental filing (Doc. 89) constitutes a separate motion for compassionate release, it is similarly **DENIED.** Further, because this Order disposes of Norman's motion for compassionate release, her motion for expedited review (Doc. 88) is **MOOT**.

By denying Norman's motion without prejudice, the Court permits Norman to file a future motion for compassionate release in the event she demonstrates a change in circumstances rising to the level of extraordinary and compelling, satisfies the exhaustion requirement with respect to those circumstances, and shows that the § 3553(a) factors support her request. However, to the extent that Norman merely repeats or provides minor elaborations to arguments that this Court has already rejected, such arguments will be summarily rejected.

**SO ORDERED**.

**SIGNED: February 22, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE