UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:17-CR-0315-B-1 |
| | § | |
| ALEXIS C. NORMAN, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Alexis C. Norman's motions for compassionate release (Docs. 91, 94). Norman's brief on the second motion (Doc. 94) indicates the second motion was intended as an amended motion for compassionate release. *See* Doc. 96, Def.'s Br., 1. Therefore, the Court **DENIES AS MOOT** the first motion (Doc. 91) in light of the amended motion for compassionate release (Doc. 94). And as explained below, the Court **DENIES** the Motion (Doc. 94).

## I.

## BACKGROUND

In April 2016, Norman pleaded guilty to health care fraud and aiding and abetting and was sentenced to 105 months of imprisonment. *See* J. at 1, *United States v. Norman*, No. 3:15-CR-00066-B (N.D. Tex. Apr. 12, 2016), Doc. 66. While on pretrial release, Norman was indicted and charged with additional fraud-related offenses. *See* Doc. 1, Indictment. She subsequently pleaded guilty to one count of conspiracy to commit health care fraud; three counts of health care fraud, aiding and abetting health care fraud, and committing an offense while on release; and one count of health care fraud and aiding and abetting health care fraud. Doc. 72, J., 1.

On May 16, 2019, the Court sentenced Norman to 360 months of imprisonment to "run concurrently with [her] undischarged term of imprisonment" from her prior case. *Id.* at 2. Specifically, her sentence "consists of 120 months as to each of Counts 1 and 5, to run consecutively with each other, and 120 months as to each of Counts 2, 3, and 4, to run concurrently with each other, and consecutively to both Counts 1 and 5[.]" *Id.*

Norman, now fifty-one years old, is confined at Carswell Federal Medical Center ("Carswell FMC") with a statutory release date of June 23, 2043.[1] As of May 31, 2023, Carswell FMC reports 0 active and 700 recovered cases of COVID-19 among its inmates.[2] Norman filed a motion for compassionate release on July 16, 2021, which the Court denied because Norman failed to demonstrate extraordinary and compelling reasons for compassionate release. *See* Doc. 83, Mot.; Doc. 85, Mem. Op. & Order, 10. On December 30, 2021, Norman filed another motion for compassionate release, which the Court denied for the same reason. *See* Doc. 86, Mot.; Doc. 90, Mem. Op. & Order, 10.

On March 27, 2023, Norman filed her third motion for compassionate release. Doc. 91, Mot. Three days later, she filed another motion for compassionate release. Doc. 94, Mot. As discussed above, Norman's brief on the second motion (Doc. 94) (hereinafter, the "Motion") indicates the Motion was intended as an amended motion for compassionate release. *See* Doc. 96, Def.'s Br., 1. The Court considers the Motion below.

---

[1] The Court derives this information from the Bureau of Prisons ("BOP")'s inmate locator, available at https://www.bop.gov/inmateloc/ (last accessed June 13, 2023).

[2] The Court derives this information from the BOP's COVID-19 webpage, available at https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed June 13, 2023).

II.

## LEGAL STANDARD

A district court lacks inherent authority to modify a defendant's sentence after it has been imposed. *See* 18 U.S.C. § 3582(c). But under § 3582(c)(1)(A), as amended by the First Step Act of 2018, "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692 (5th Cir. 2020) (quoting § 3582(c)(1)(A)(i)).

III.

## ANALYSIS

A.  *Norman Is Not Entitled to Appointment of Counsel*

Norman files an Attachment (Doc. 95) with her Motion. In the Attachment, Norman requests the Court appoint counsel for purposes of the Motion. *See* Doc. 95, Attach., 3. Norman's request for appointment of counsel is **DENIED**. A district court must appoint counsel when there is a statutory or constitutional requirement to do so and may appoint counsel, under certain other circumstances, if justice so requires. *See, e.g., United States v. Strother*, 2021 WL 2188136, at *2 (E.D. Tex. May 27, 2021); *United States v. Molina-Flores*, 2018 WL 10050316, at *1–2 (N.D. Tex. Feb. 13, 2018) (Horan, Mag. J.) (noting that district courts have discretion to appoint counsel for some claims when "the petition presents significant legal issues, and if the appointment of counsel will benefit the petitioner and the court in addressing [the] claim"). This Court, like others within the Fifth Circuit, has held that there is no statutory or constitutional right to appointment of counsel for motions filed under § 3582(c)(1)(A). *United States v. Reed*, 2022 WL 198405, at *1 (N.D. Tex. Jan. 21, 2022)

(Boyle, J.); *United States v. Jackson*, 2020 WL 4365633, at *3 (N.D. Tex. July 30, 2020) (Lindsay, J.), *aff'd*, 829 F. App'x 73 (5th Cir. 2020); *see United States v. Contreras*, 2021 WL 1536504, at *2 (E.D. Tex. Apr. 19, 2021); *United States v. Wilfred*, 2020 WL 4698993, at *1 (E.D. La. Aug. 13, 2020). And here, Norman's motion "presents straightforward claims based on h[er] medical conditions and the threat from COVID-19 [and] is not legally or factually complex." *See United States v. Smith*, 2022 WL 326688, at *1 (N.D. Tex. Feb. 2, 2022) (Boyle, J.); *Contreras*, 2021 WL 1536504, at *2 (noting that compassionate release motions are generally "not particularly complex factually or legally"). Therefore, the Court finds that Norman is not entitled to appointment of counsel.

B.    *Norman's Motion for Compassionate Release Fails*

As explained below, the Court **DENIES** Norman's request for compassionate release because she has not demonstrated extraordinary and compelling reasons for a sentence modification and because the § 3553(a) factors weigh against her request.

1.    Norman Has Exhausted Her Administrative Remedies

Section 3582(c)(1)(A) allows a defendant to bring a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A).

Here, the Court finds that Norman has satisfied the exhaustion requirement. In support of her Motion, Norman provides a copy of her request for compassionate release, dated September 23, 2022, and the warden's response denying her request, dated September 26, 2022. Doc. 94, Mot., 13–14. The response shows that more than thirty days have lapsed between the warden's receipt of Norman's request and the filing of her Motion. *See id.* Thus, Norman satisfied the exhaustion

requirement under § 3582. *See Ezukanma*, 2020 WL 4569067, at *2–5. Having determined that Norman satisfied the exhaustion requirement, the Court turns to the merits of her Motion.

    2.    <u>Norman Has Not Demonstrated Extraordinary and Compelling Reasons for Release</u>

Although Norman exhausted her administrative remedies, she has not shown "extraordinary and compelling reasons" justifying her proposed sentence modification. *See* § 3582(c)(1)(A)(i). Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that merit compassionate release. *See id.* Rather, Congress "delegated that authority to the Sentencing Commission" and directed it "to promulgate general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) that describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021) (citations and internal quotation marks omitted).

Prior to the passage of the First Step Act, the Sentencing Commission issued a policy statement—U.S.S.G. § 1B1.13—that "describes four 'extraordinary and compelling reasons' that could warrant a reduced sentence: (1) medical conditions, (2) age, (3) family circumstances, and (4) '[o]ther [r]easons.'" *United States v. Tyler*, 2021 WL 736467, at *2 (E.D. La. Feb. 25, 2021) (quoting U.S.S.G. § 1B1.13 cmt. 1(A)–(D)). The Fifth Circuit has since held that § 1B1.13 only applies to motions filed by "the Director of the [BOP]" and thus does not "bind[] a district court addressing a prisoner's own motion under § 3582." *Shkambi*, 993 F3d at 392–93 (citing § 1B1.13). While not binding, § 1B1.13 and its commentary nonetheless "inform[] [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *see United States v. Rivas*, 833 F. App'x 556,

558 (5th Cir. 2020) (per curiam). Applying its discretion, the Court concludes that Norman has not provided "extraordinary and compelling reasons" for release. *See* § 3582(c)(1)(A).

To begin, the Court notes that Norman's instant motion for compassionate release largely mirrors and rephrases the arguments made in her previous motions for compassionate release. *Compare* Doc. 96, Def.'s Br., *with* Doc. 87, Def.'s Br., *and* Doc. 84, Def.'s Br. Norman alleges that she suffers from several medical issues including, but not limited to, chronic obstructive pulmonary disease, Long COVID disease, gastric reflux disease, morbid obesity, and high cholesterol.[3] Doc. 96, Def.'s Br., 1. Norman provides some limited documentation of medical visits recording these symptoms. *See* Doc. 92, Medical Records; Doc. 95, Medical Records. However, the Court finds Norman's medical conditions do not rise to the level of extraordinary and compelling reasons warranting her proposed sentence reduction.

As with her previous motions, Norman has failed to show "that her conditions involve necessity and urgency such that her requested sentence modification is warranted." *United States v. Norman*, 2021 WL 3406729, at *4 (N.D. Tex. Aug. 4, 2021). As previously explained, the Court's analysis of Norman's medical conditions goes beyond mere diagnoses and examines "the severity of her medical conditions and her ability to manage her health while incarcerated." *See id.* Norman asserts she has debilitating migraine headaches, weakness in her right hand, and shortness of breath, among other symptoms. *See* Doc. 96, Def.'s Br., 1, 5. But Norman has not produced any medical records showing that she is incapacitated or otherwise unable to care for herself. *See generally* Doc.

---

[3] Norman also asserts that many of her symptoms are consistent with other, more severe medical issues such as multiple sclerosis or other forms of demyelinating disease. *See* Doc. 96, Def.'s Br., 1, 5. She admits, however, that she "[has not] received a formal diagnosis" of any of these conditions. *See id.* at 5. As the Court has explained, it will consider Norman's documented symptoms but will not assume that Norman suffers from undiagnosed medical ailments. *See United States v. Norman*, 2022 WL 524787, at *3 n.5 (N.D. Tex. Feb. 22, 2022) (Boyle, J.).

92, Medical Records; Doc. 95, Medical Records. And in general, Norman's medical documentation makes it evident that she has received medication, testing, and attention to help her treat and manage her conditions. *See generally id.*

Norman complains that she has been waiting for over a year for a follow-up visit with the neurologist. *See* Doc. 96, Def.'s Br., 5. Norman argues this delay has prevented her from receiving a diagnosis regarding her suspected demyelinating disease. *See id.* "Several courts have concluded that the failure to provide necessary treatment or undue delays in treating serious medical conditions may present 'extraordinary and compelling reasons' warranting compassionate release." *United States v. Verasawmi*, 2022 WL 2763518, at *7 (D.N.J. July 15, 2022) (collecting cases). "[M]ost of these cases involved defendants with life-threatening conditions that were nearly certain to be fatal because of BOP's gross mismanagement." *United States v. English*, 2022 WL 17853361, at *5 (E.D. Mich. Dec. 22, 2022) (citing *id.* at *9).

However, courts have also found extraordinary and compelling reasons when the BOP failed to timely provide diagnostic testing when a serious medical condition is suspected. *See, e.g.*, *United States v. Burr*, 2022 WL 17357233, at *8 (M.D.N.C. Dec. 1, 2022) (finding extraordinary and compelling circumstances when the BOP failed to obtain a medically-ordered test for over two years, the failure could prevent to timely diagnosis and treatment of cancer, and the failure was "not an aberration"). For example, in *United States v. Almontes*, an MRI revealed the defendant had a severe, though not life-threatening, spinal issue. 2020 WL 1812713, at *6 (D. Conn. Apr. 9, 2020). At the recommendation of the treating physician, the BOP staff submitted an urgent request for surgery to be scheduled within two weeks. *Id.* Although the BOP periodically noted the defendant needed surgery and the defendant repeatedly asked when the surgery would occur, the BOP failed to

schedule the surgery for the next year and a half. *Id.* at *7. The court found this "indifference" to the defendant's condition constituted extraordinary and compelling reasons to grant compassionate release. *See id.* at *7, 9.

The Court does not have sufficient evidence to conclude the delay in Norman's follow-up appointment constitutes extraordinary and compelling reasons to grant compassionate release. While demyelinating disease is a severe condition, nothing in the medical records Norman has submitted to the Court indicates her treating physicians suspect she suffers from demyelinating disease. Nor do the medical records indicate the same urgency present in *Almontes*. *See id.* at *6. Norman's concerns are understandable; she suspects she suffers from a serious medical condition and has waited for a year for a follow-up visit. However, without additional evidence showing Norman's condition is severe, the Court cannot conclude the BOP's delay in scheduling her follow-up appointment constitutes extraordinary and compelling reasons to grant compassionate release.

Norman also argues that extraordinary and compelling reasons for her sentence reduction exist because her medical conditions make her more susceptible to severe complications should she contract COVID-19. *See* Doc. 96, Def.'s Br., 1–7. The Court has previously rejected these arguments, emphasizing that "a defendant cannot refuse the vaccine to prevent against COVID-19 on the one hand and then argue for compassionate release because [s]he faces an increased risk of severe illness or death should [s]he contract COVID-19 on the other hand." *Norman*, 2021 WL 3406729, at *4 (internal quotation marks omitted); *Norman*, 2022 WL 524787, at *4. Since the Court's previous order, the number of active cases of COVID-19 among inmates at Carswell FMC has dropped from 48 to 0. *See Norman*, 2022 WL 524787, at *1; *supra*, note 2. Norman has not presented any new evidence to disturb the Court's prior finding that "Norman's individualized risk

posed by COVID-19" is not "an extraordinary and compelling reason for a sentence reduction, particularly in light of the medical testing and treatment she has received at Carswell FMC." *See Norman*, 2022 WL 524787, at *4. Therefore, exercising its discretion, the Court **DENIES WITHOUT PREJUDICE** Norman's Motion.

### 3. The § 3553 Factors Weigh Against Release

Finally, even if Norman had demonstrated extraordinary and compelling reasons warranting a sentence modification, the Court is required to consider the sentencing factors set forth in § 3553 to the extent they are applicable. § 3582(c)(1)(A). Section 3553 requires the Court to consider, among other things, whether a sentence "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." § 3553(a)(2)(A). The Court is not persuaded that these factors support Norman's request.

While on pretrial release following her conviction for health care fraud and aiding and abetting health care fraud, Norman pleaded guilty to additional fraud-related offenses. Doc. 72, J., 1. In Norman's case, the Court found 360 months of imprisonment appropriate to serve the goals of § 3553(a). *Id.* And with a statutory release date of June 23, 2043, a significant portion—240 months, or 67%—of Norman's sentence remains to be served. In this case, Norman's request for a sentence modification would not "reflect the seriousness of the offence," "promote respect for the law," or "provide just punishment for the offense[.]" § 3553(a)(2)(A); *see also Thompson*, 984 F.3d at 434 (noting that compassionate release is generally granted only "for defendants who had already served the lion's share of their sentences"). The § 3553(a) factors thus weigh against Norman's request. This is an independent justification for denying her motion.

## IV.

## CONCLUSION

Norman's request for compassionate release fails because she has not demonstrated extraordinary and compelling reasons for compassionate release and the § 3553(a) factors weigh against her request. For these reasons, Norman's amended motion for compassionate release (Doc. 94) is **DENIED WITHOUT PREJUDICE**. And the Court **DENIES AS MOOT** Norman's first motion (Doc. 91) in light of her amended motion for compassionate release (Doc. 94).

By denying Norman's motion without prejudice, the Court permits Norman to file a future motion for compassionate release in the event she demonstrates a change in circumstances rising to the level of extraordinary and compelling, satisfies the exhaustion requirement with respect to those circumstances, and shows that the § 3553(a) factors support her request. However, to the extent that Norman merely repeats or provides minor elaborations to arguments that this Court has already rejected, such arguments will be summarily rejected.

**SO ORDERED**.

**SIGNED: June 13, 2023**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE